OPINION
Appellant, Deborah Proffitt, appeals the decision of the Butler County Court of Common Pleas, Juvenile Division, to terminate appellant's parental rights and grant permanent custody of her two minor children (the "children") to the Butler County Children Services Board ("BCCSB").[1] We affirm.
On or about August 28, 1994, appellant and her husband, Steve Proffitt,[2] voluntarily gave temporary custody of the children to the Hamilton County Department of Human Services ("HCDHS"). Appellant was hospitalized for threatening to commit suicide and kill her children. She was diagnosed with a "major depressive episode," "organic mood disorder," and drug dependency by psychologist James D. Kelly, Ph.D. At the time of appellant's suicide threat, appellant was residing with the children at the Alice Paul House, a shelter for women victimized by domestic violence. Appellant told HCDHS that she was abused by Proffitt and that Proffitt was a drug user. On September 19, 1994, HCDHS filed a complaint alleging the children were dependent. See R.C.2151.04(B). Appellant and Proffitt agreed to a finding of dependency on November 15, 1994.
A case plan was filed by HCDHS on September 19, 1994. The plan noted that both appellant and Proffitt had a "severe drug abuse problem" and lacked housing. The plan goal was reunification of the children with appellant and Proffitt. Appellant completed a drug rehabilitation program at Care-Unit Hospital on November 8, 1994. Proffitt was also entered into a program, but did not successfully complete drug rehabilitation.
In December 1994, Proffitt and appellant moved to Butler County. HCDHS referred the case to BCCSB on March 17, 1995, but maintained jurisdiction over the case. On April 27, 1995, upon recommendation of HCDHS, the children were returned to Proffitt and appellant for an "extended visit" until temporary custody of HCDHS was terminated. The order noted that appellant and Proffitt had obtained adequate housing, but the record is unclear as to the treatment for appellant's psychological illnesses. HCDHS terminated temporary custody of the children on June 1, 1995 and had no further involvement in the case.
On August 6, 1995, appellant attempted to commit suicide and was admitted to the Fort Hamilton-Hughes Psychiatric Unit. The children were left in the care of appellant's maternal grandmother, who contacted BCCSB to remove the children from her home. The children were placed in foster care by BCCSB.
On November 7, 1995, BCCSB filed a complaint alleging the children were dependent. By an ex parte order, the children were placed in temporary custody of BCCSB, pending an investigation and hearing. After a hearing on December 19, 1995, the children were found dependent and placed in the temporary custody of BCCSB.
A case plan was filed by BCCSB on December 22, 1995. The plan goal was for the reunification of the children with appellant and Proffitt. In order to achieve reunification, the plan called for appellant to (1) "interact in a healthy and appropriate manner" with Proffitt; (2) "develop and demonstrate a healthy well-being"; (3) "demonstrate appropriate parenting skills"; (4) provide adequate housing for the children.
An October 30, 1996 entry indicates adequate progress was not being made toward the case plan goal. On May 16, 1997, BCCSB moved for permanent custody of the children. The motion was supported by the guardian ad litem. A permanent custody hearing was held on August 22, 1997. In a September 3, 1997 entry, the trial court terminated appellant's parental rights and granted permanent custody of the children to BCCSB. On October 1, 1997, appellant filed a timely notice of appeal. On June 4, 1998, this court remanded this case to the trial court because the findings of fact and conclusions of law did not sufficiently comply with the mandate of R.C. 2151.419(B).[3] On June 30, 1998, the trial court entered revised findings of fact and conclusions of law. From the revised entry, we consider appellant's four assignments of error:
Assignment of Error No. 1:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT MOTHER BY FINDING THAT THE CHILDREN COULD NOT BE PLACED WITH HER WITHIN A REASONABLE TIME.
Assignment of Error No. 2:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT MOTHER WHEN IT GRANTED THE MOTION FOR PERMANENT CUSTODY RATHER THAN PLACING THE CHILDREN IN LONG-TERM FOSTER CARE.
Assignment of Error No. 3:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT MOTHER IN GRANTING PERMANENT CUSTODY OF THE MINOR CHILDREN TO BUTLER COUNTY CHILDREN'S SERVICES BOARD IN THE ABSENCE OF REASONABLE EFFORTS TO IMPLEMENT THE REUNIFICATION PLAN.
Assignment of Error No. 4:
 THE JUDGMENT OF [SIC] TRIAL COURT AWARDING PERMANENT CUSTODY OF THE CHILDREN TO THE BUTLER COUNTY CHILDREN'S SERVICES BOARD WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
We initially note that natural parents have a constitutionally protected liberty interest in the care and custody of their children. See Santosky v. Kramer (1982), 455 U.S. 745,102 S.Ct. 1388. A motion by the state to terminate parental rights "seeks not merely to infringe that fundamental liberty interest, but to end it." Id. at 759, 102 S.Ct. at 1397. In order to meet the constitutional demands of due process, the state is required to demonstrate by clear and convincing evidence that the statutory standards have been met. Id. at 769, 102 S.Ct. at 1403. "Clear and convincing evidence" requires that the proof "produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." Cross v. Ledford (1954),161 Ohio St. 469, paragraph three of syllabus.
When a state agency moves for permanent custody, the trial court is required to hold a hearing to determine "if it is in the best interest of the child to permanently terminate parental rights and grant permanent custody to the agency that filed the motion." R.C. 2151.414(A)(1). In order to grant permanent custody to a state agency, the agency must demonstrate that it is in the best interest of the child and that any of the following apply:
 (1) The child is not abandoned or orphaned and the child cannot be placed with either of his parents within a reasonable time or should not be placed with his parents;
 (2) The child is abandoned and the parents cannot be located;
 (3) The child is orphaned and there are no relatives of the child who are able to take permanent custody.
R.C. 2151.414(B).
At a permanent custody hearing, the trial court must consider any relevant factor to a child's best interest. R.C. 2151.414(D). The factors include, but are not limited to:
 (1) The interaction and interrelationship of the child with his parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 (2) The wishes of the child, as expressly directed by the child or through the guardian ad litem, with due regard for the maturity of the child;
(3) The custodial history of the child;
 (4) The child's need for a legally secure permanent placement and whether the type of placement can be achieved without a grant of permanent custody to the agency.
Id.
When granting permanent custody to a public children services agency, the trial court also must find that one of the factors enumerated in R.C. 2151.414(E) exist. In re William S. (1996),75 Ohio St.3d 95, syllabus.[4] The factors include:
 (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. * * *
 (2) Chronic mental illness, chronic emotional illness * * * that is so severe that it makes the parent unable to provide an adequate permanent home for the child * * *.
* * *
(12) Any other factor the court considers relevant.
R.C. 2151.414(E). If one of the factors apply, "the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent." Id.
Jim Sarris, a licensed social worker at Catholic Social Services, testified that he began working with Proffitt and appellant on a weekly basis in February 1996. In October 1996, the counseling was terminated due to three missed appointments. Sarris characterized the progress as "minimal." Sarris noted that progress was difficult because Proffitt and appellant were "struggling" to meet "basic needs." He stated appellant and Proffitt sometimes would leave early or late to eat at another social agency. Appellant began taking antidepressants, but stopped due to the price of the medication. With the help of Catholic Social Services, appellant began taking the medication again. In a May 7, 1996 letter to BCCSB, Sarris emphasized the need for one year of stability before reunification could be a viable option. Appellant also received counseling from a psychologist, Dr. Sierra. Appellant's progress with Dr. Sierra was limited.
A May 7, 1996 BCCSB social summary states that appellant and Proffitt "lived in their van for most of the winter." After living with Proffitt's brother, appellant and Proffitt moved into an apartment in July 1996.
On two separate occasions, appellant was enrolled in the Developmental Living Skills ("DLS") program. Appellant had difficulty concentrating and grasping the material on issues such as disciplining children, keeping a budget and other basic family issues. The first session was December to May 1996 and was terminated due to multiple absences. The second session was from January and May 1997 and was not completed due to absences.
At the time of the permanent custody hearing, appellant had been living alone since April 1997 and had filed for divorce. The guardian ad litem testified that appellant "has tried very hard to overcome problems but at the same time we have to look at the children and how they've lived the last four years of their life and what the prospects are in the future and unfortunately I don't think that she's capable of consistently being the parent they need * * *." The guardian ad litem noted that appellant had made very little progress "for a substantial period of time" and, more recently, made progress on a "personal level."
The record supports the guardian ad litem's conclusion. By continuing the marriage with Proffitt until April 1997, despite his drug abuse, domestic violence, and poor attitude toward any assistance of BCCSB or Catholic Social Services, appellant slowed any meaningful progress toward reunification within a "reasonable time."
Also, appellant has not taken sufficient responsibility for her psychological illnesses. At an adult assessment completed November 18, 1995, Charles Lee, a psychologist from the Children's Diagnostic Center, indicated that "[i]ndividually, Ms. Proffitt's emotional stability must be monitored, and she is likely to need psychiatric hospitalization in the future." At the permanent custody hearing, appellant blamed her psychological problems almost exclusively on Proffitt. Alternatively, appellant suggested she was merely "a little nervous."
While living alone, appellant's testimony indicated she was barely subsisting financially from month to month. Appellant was seeking subsidized housing for herself and the children.
Overall, the record indicates appellant has cyclical psychological and emotional problems, evidenced by at least two suicide attempts. At the permanent custody hearing, appellant did not face this problem directly. The record also does not show appellant is prepared to provide a stable home for the children within a "reasonable time." Since August 1994, the children have been almost continuously involved with HCDHS and BCCSB and need a permanent home. See R.C. 2151.414(D)(3) and (4). Accordingly, we find clear and convincing evidence to support the decision of the trial court to terminate appellant's parental rights and grant permanent custody of the children to BCCSB. The first assignment of error is overruled.
In the second assignment of error, appellant argues the trial court should have placed the children in long-term foster care instead of granting BCCSB's motion for permanent custody of the children. We initially note that long-term foster care was not requested by BCCSB. See R.C. 2151.415(C)(1). Even if the option of long-term foster care was presented, the trial court was entitled to conclude long-term foster care was not in the best interest of the children. Id. Finally, the trial court is not required to place a child in long-term foster care when "the vigorous statutory requirements for the termination of parental rights have been met." In re Twyla Johnson (June 22, 1998), Butler App. No. CA97-09-173, unreported, at 11. The second assignment of error is overruled.
In the third assignment of error, appellant argues BCCSB failed to make reasonable efforts to implement a reunification plan. We find that the marital and individual counseling, the DLS program, supervised visitation, and other assistance provided by BCCSB constitute a reasonable effort to assist appellant in achieving the original case plan goal of reunification. See In re Lacy (July 18, 1994), Butler App. No. CA93-06-101, unreported, at 10. The third assignment of error is overruled.
Appellant's fourth assignment of error argues that the decision of the trial court was against the manifest weight of the evidence. A judgment will not be reversed on appeal for being against the manifest weight of the evidence if the judgment is supported by credible evidence. In re Noe (July 21, 1997), Butler App. Nos. CA96-10-217 and CA96-11-224, unreported, at 14-15. For the reasons detailed in the previous assignments of error, we find substantial and credible evidence supported the trial court's decision to terminate appellant's parental rights and grant permanent custody of the children to BCCSB. The fourth assignment of error is overruled.
Judgment affirmed.
YOUNG, P.J., and POWELL, J., concur.
[1] The children are Jeremy Bill Lintner, born 1/28/90 and Jessica Proffitt, born 2/17/93. Jeremy's natural father is deceased.
[2] Steve Proffitt's parental rights regarding the children were also terminated by the trial court.
[3] R.C. 2151.419(B) provides in relevant part that "[t]he court shall issue written finding of facts setting forth its determination * * *. In its written finding of facts, the court shall briefly describe the relevant services provided by the agency to the family of the child and why those services did not * * * enable the child to return home."
[4] When William S. was decided, R.C. 2151.414(E) included eight specific factors. R.C. 2151.414(E) was subsequently revised to include twelve factors. Factor twelve is "[any] other factor the court considers relevant." R.C. 2151.414(E)(12). Consequently, the importance of the holding in William S. has been greatly diminished.